UNITED STATES

v.

**Airman Basic James HILL, Jr., FR 254–04–7437 United States Air Force.**

**ACM S25465.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 22 Oct. 1981.

Decided 2 July 1982.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Richard A. Morgan.

Appellate Counsel for the United States: Colonel James P. Porter and Major Michael J. Hoover.

Before HODGSON, POWELL and MILLER, Appellate Military Judges.

## DECISION

MILLER, Judge:

The accused was convicted, contrary to his pleas, of making and uttering worthless checks on six different occasions, in violation of Article 123a, Uniform Code of Military Justice, 10 U.S.C. § 923a. He was sentenced to a bad conduct discharge, confinement at hard labor for three months, and forfeiture of $275.00 per month for three months.

The defense asserts that acts of *subsequent* misconduct cannot be admitted in a litigated case under the provisions of Military Rule of Evidence (Mil.R.Evid.) 404(b) and that certain letters of reprimand should not have been admitted during sentencing because they were not legitimately a part of the accused's Unfavorable Information File (UIF). We find merit only in the latter proposition. After rejecting three of the five contested LOR's and reassessing the sentence, we find it nonetheless appropriate and affirm.

### I

█ The defense first asserts the military judge erred by admitting evidence that when the accused made and uttered a certain check 31 days subsequent to the date of the last check offense charged, he did so knowing the account upon which he drew the check was non-existent. According to the defense argument, although Mil.R.Evid. 404(b) permits admission of other acts of misconduct to establish an accused's "knowledge, intent, or absence of mistake" as to charged offenses, it does not permit admission of subsequent acts of misconduct to establish the existence of such factors at earlier times when charged offenses were allegedly committed.

We disagree.

There is a dearth of military precedent on this point, occasioned, in part, by the very recent creation of Mil.R.Evid. 404(b); however, the military rule's language is virtually identical to Federal Rule of Evidence (Fed.R.Evid.) 404(b). Consequently, a substantial body of well-reasoned civilian case law addresses this issue.

Recently, the Eighth Circuit, in a series of three cases involving prosecution for failure to file income tax returns, has held that evidence indicating an accused's failure to file such returns for years subsequent to those charged, is relevant and admissible under Fed.R.Evid. 404(b) to establish an accused's intent and willfullness with regard to unfiled returns in prior charged years. *United States v. Farber,* 630 F.2d 569 (8th Cir. 1980); *United States v. Thiel,* 619 F.2d 778 (8th Cir. 1980), and *United States v. Luttrell,* 612 F.2d 396 (8th Cir. 1980).

Also, in a prosecution for passing counterfeit notes, the Seventh Circuit has held that evidence an accused possessed a quantity of such notes subsequent to the charged offense was admissible under Fed.R.Evid. 404(b) as tending to prove that his passing of a single, charged, note was not mere accident or mistake. *United States v. Fairchild,* 526 F.2d 185 (7th Cir. 1975).

In a case, virtually on all fours with the one now at bar, the Court of Appeals of Washington has specifically held that despite an accused's claim that he did not know his checking account had been "closed" until after he wrote a charged check on it, evidence that he later wrote a second check on the same account after he knew it was closed, was "relevant to negating his claim [that] he 'accidentally' grabbed the wrong check book." It was, therefore, admissible. *State v. Kane,* 23 Wash.App. 107, 594 P.2d 1357, 1359 (1979).

Although *Kane, supra,* did not specifically interpret Fed.R.Evid. 404(b), its holding stems from logic, essentially identical in all respects, to that utilized in the Federal interpretations of Rule 404(b) referenced above.

Applying this same logic to the instant case, we conclude the contested uncharged

misconduct was properly admitted by the military judge under Mil.R.Evid. 404(b).[1]

## II

■ The defense also asserts that the military judge erred by admitting, during sentencing, five separate letters of reprimand (LORs) all issued on 15 September 1981, one month prior to trial. We first note this case was tried prior to publication of a revised Air Force Regulation 35–32, Unfavorable Information Files, Control Rosters, Administrative Reprimands and Admonitions, 12 February 1982.[2] Consequently, without considering any changes resulting from this new regulation, we test each of these letters according to the standard derived from the earlier edition of AFR 35–32, and set out in *United States v. Hagy,* 12 M.J. 739 (A.F.C.M.R.1981).

> Absent a legitimate "correction" or "management tool" function contemplated by AFR 35–32 [22 September 1975 edition], LORs entered into a UIF are not properly personnel records admissible in courts-martial under paragraph 75d, MCM [Manual for Courts-Martial, 1969, (Rev.)].

*Id.,* at 744.

■ Two of these LORs deal with recent absences from duty. One letter deals with separate absences on 1 and 2 September 1981; the other, with absences on 23, 24, 26, and 28 August 1981. Considering a commander's need to dissuade personnel from continuing to engage in such misconduct, and, at the same time, recognizing the petty nature of such individual offenses in comparison with the violations of Article 123a, UCMJ, with which this commander later charged the accused, we find that these LORs were properly administered and entered into the accused's UIF file. Hence, they were properly admitted during the sentencing portion of the trial.

■ The remaining three LORs, on the other hand, dealt with bad check and debt offenses, the last of which occurred on 18 July 1981, some 59 days prior to the date the LORs were issued. Despite the fact that each offense contained in these LORs was as serious as those that formed the basis for charges in this case, the commander issued these LORs even though it appears he had already determined to prefer those other offenses. The other offenses, were in fact, preferred against the accused only 10 days following issuance of these LORs. Based on such facts, we conclude these last LORs did not perform any legitimate "correction" or "management tool" function. Consequently, the military judge's admission of them for sentencing consideration was erroneous.

After excluding this improperly admitted evidence, and reconsidering the sentence based solely upon properly admitted evidence, we find the adjudged sentence nonetheless appropriate. Our review of the entire record of trial and the remaining assignments of error convinces us that the findings and sentence adjudged are correct both in law and fact.

Accordingly, the findings of guilty and the sentence are

AFFIRMED.

HODGSON, Chief Judge, and POWELL, Senior Judge, concur.

---

1. Military Judges are cautioned against interpreting this holding as broad authority favoring the admissibility of post-offense misconduct. They should consider whether the evidence is needed for successful prosecution and balance the evidence's probative value against its prejudicial effect, or determine if it is relevant as rebuttal. The exercise of sound discretion is the significant factor.

2. Since the standard enunciated in *United States v. Hagy,* 12 M.J. 739 (A.F.C.M.R.1981), was based upon this Court's interpretation of an earlier edition of Air Force Regulation 35–32, Unfavorable Information Files, Control Rosters, Administrative Reprimands, and Admonitions, 22 September 1975, trial judges are urged to review the revised regulation to determine the continued applicability of the *Hagy, supra,* standard.