# IN THE COURT OF APPEALS OF IOWA

No. 22-1774
Filed July 13, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DAVID JOSEPH HANSON Jr.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.


        A defendant appeals the sentence imposed upon his conviction for threat of terrorism.  **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney General, for appellee.


        Considered by Schumacher, P.J., and Ahlers and Badding, JJ.

**BADDING, Judge.**

In May 2022, David Hanson Jr. posted, "Welp, time to drive by the schools with my AR-15, full clip," on a social media site. He was charged with and pled guilty to a threat of terrorism in violation of Iowa Code section 708A.5 (2022). At his sentencing hearing, the district court focused on the nature of his crime in this era of school shootings in sentencing him to prison. Hanson appeals, claiming the court "abused its discretion by considering only the nature of the offense." We affirm.

**I.      Sentencing Proceeding**

After accepting Hanson's guilty plea, the district court ordered a presentence investigation report. The report detailed the circumstances of the crime, along with Hanson's criminal history; employment and family circumstances; mental-health history; and substance-abuse history. The presentence investigator recommended a suspended sentence and probation. The court opened Hanson's sentencing hearing by stating that it had reviewed the report and dictating the investigator's recommendation into the record. The court then asked for the State's sentencing recommendation.

The prosecutor pushed for the maximum sentence, highlighting the circumstances of the crime and Hanson's claim, coupled with his apology, "that his actions were a joke or not anything that he would have actually done." The prosecutor continued:

> I personally could not know if Mr. Hanson was really wanting to drive by a school with a gun on May 31st, nor do I know if he was joking. What I do know is that we've had more school shootings in our country in 2022 than the total in 2018, 2019, 2020 and 2021, and we have two-and-a-half months left of this year. I also know people

go to take their kids to school every day, myself included, and hope they come home safe in our arms, and so we cannot tolerate these type of school comments. . . .

. . . Mr. Hanson is almost 43 years old, and I would say he should have known better. I think as a general deterrence to everybody in our community, Mr. Hanson needs to be sent to prison for an indeterminant time for up to 5 years.

In contrast, Hanson advocated for the recommendation in the presentence investigation report, pointing out that his post "was not a public forum post, it was on a private group" with about 1000 members. Defense counsel told the court Hanson had apologized and understood "that he should not have done what he did, especially when explaining to him the current social climate towards this course of action." And she noted that "when they searched his home, there were no weapons of any kind." Finally, counsel directed the court's attention to three letters of recommendation, one of which was from Hanson's mental-health provider. Counsel concluded her remarks by stating: "He is willing to do anything that probation requires of him, including the residential facility. . . . [F]or all of those reasons, he would be asking that the Court suspend the sentence and put him on formal probation . . . ."

Right after defense counsel was finished, the district court stated:

THE COURT: Formal probation is not appropriate. You don't make those kind of threats in this current environment or any time. Do you understand that?
THE DEFENDANT: Yes, I do.
THE COURT: You're not a parent.
THE DEFENDANT: Yes.
THE COURT: You don't know what their fear is as a parent, when they wake up in the morning to hear that somebody has made a threat to drive by a school with an AK-47, an AR-15, a shotgun, or any other kind of gun. We place our children in school every day, thinking that they're going to be safe. It's an environment that is supposed to be enveloped in love, confidence, and safety. So what's

the point? All of us would home school our children, if that wasn't the point.

What a terrible thing to do here. Terrible. And [the prosecutor] is correct. Nobody knows if that was a joke. But when you hear that as a parent, all you want to do is hunker down, hide your children, and not let them go anywhere for fear that somebody who's having a bad day is going to take it out on an innocent child. So, 5 years prison—

[DEFENSE COUNSEL]: Your Honor, one moment. He's technically entitled to allocution before the Court pronounces the sentence.

THE COURT: Is there anything you'd like to say?

THE DEFENDANT: You're right. There's no excuse for it, but I guess I wouldn't shoot anybody. I'm deeply sorry, and I would apologize to the group in person if I could, but I know I couldn't, it was a private group, I meant nothing by it. There's no, I don't even know how to shoot a gun, I have no gun, I can't even do it, a dumb thing I admit, very wrong, however, but I understand that it's wrong.

THE COURT: I understand.

THE DEFENDANT: Everything she showed here I'm not—I'm not a violent person, it should show that, and I'm a felon and cannot have a gun.

THE COURT: That really isn't the point. There are plenty of people in this country that are felons and shouldn't have guns, that have mental health histories and shouldn't have guns, and there are children that shouldn't have guns, and I mean children in the form of under age 18. Somehow they get them. They don't care about the laws. They don't care about going through proper procedures to get them. They get them, and people are harmed. A child may die, a child may be injured, the parents have to live on after that occurs. And that's a lifetime of suffering. You can't—

THE DEFENDANT: But I—but I—

THE COURT: You can't fix that. You can't fix that when a child sends—or is going to school because a parent sends them. You don't understand the guilt a parent feels about that. They couldn't be there to protect their child. So I can't, I can't give you probation, Mr. Hanson. That's not appropriate.

THE DEFENDANT: But I can ask for that.

THE COURT: That's all right. You can disagree with me, and you have the right to appeal, which I'm going to tell you, but you're going to prison. 5 years. I will not impose a fine. It will be suspended.

The court memorialized its decision in a written sentencing order, which in

boilerplate fashion described its "reasons for sentence" as follows: "The court

determines that the above sentence is most likely to protect society and rehabilitate the defendant based upon the nature of the offense, defendant's prior record, and the recommendation of the parties and for the reasons stated in the [presentence investigation report], if any."

## II.     Analysis

Hanson argues the district court abused its discretion in sentencing him to prison because the "court's focus was solely on the nature of the offense when it immediately rejected defense counsel's request for probation and even had to be reminded of Hanson's right of allocution." While the State agrees that "the court emphasized the nature of the offense and attending circumstances," it submits the court "did not stop there" and also considered the presentence investigation report, Hanson's criminal history, age, and family circumstances; the impact of his actions; and Hanson's need for accountability and chances at reform.

"A sentencing court's decision to impose a specific sentence that falls within the statutory limits," as this one does, "'is cloaked with a strong presumption in its favor, and will only be overturned for an abuse of discretion.'" *State v. Damme*, 944 N.W.2d 98, 105–06 (Iowa 2020) (quoting *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002)). "An abuse of discretion will not be found unless we are able to discern that the decision was exercised on grounds or for reasons that were clearly untenable or unreasonable." *Formaro*, 638 N.W.2d at 724.

To aid our appellate review of these discretionary decisions, Iowa Rule of Criminal Procedure 2.23(3)(d) requires the sentencing court "to state on the record its reasons for selecting a particular sentence." *State v. Jacobs*, 607 N.W.2d 679, 690 (Iowa 2000). The "minimum essential factors" that must be considered and

weighed include the presentence investigation report; the maximum opportunity for rehabilitation; protection of the community from further offenses; the defendant's age, criminal history, employment and family circumstances, and mental-health and substance-abuse history; and the nature of the offense. Iowa Code §§ 901.5, 907.5(1); *State v. Hopkins*, 860 N.W.2d 550, 554–55 (Iowa 2015). Because the "punishment should fit both the crime and the individual," the sentencing court may not base its decision on any single factor. *State v. Hildebrand*, 280 N.W.2d 393, 396 (Iowa 1979); *accord State v. McKeever*, 276 N.W.2d 385, 387 (Iowa 1987) ("[N]o single factor, including the nature of the offense, will be solely determinative.").

Hanson is correct that the court's consideration of other factors is not readily apparent from the court's remarks at the sentencing hearing. But in determining "whether the court considered all pertinent matters in imposing a particular sentence, we look to all parts of the record to find supporting reasons." *State v. Joy*, No. 03-1654, 2004 WL 1252691, at *3 (Iowa Ct. App. June 9, 2004); *accord State v. Boltz*, 542 N.W.2d 9, 11 (Iowa Ct. App. 1995). The record includes not just the reasons stated during the sentencing hearing but also the reasons set out in the written sentencing order. *See State v. Lumadue*, 622 N.W.2d 302, 304 (Iowa 2001). By considering those parts of the record together, we find the court did consider factors beyond the nature of the offense—but barely. *See Boltz*, 542 N.W.2d at 11 ("Even a succinct and terse statement of reasons may be sufficient as long as the brevity displayed does not prevent us from reviewing the exercise of the trial court's sentencing discretion.").

At the start of the hearing, the court announced its review of the presentence investigation report, which contained details about Hanson's criminal history, age, and family circumstances. *See State v. Eckhardt*, No. 01-1552, 2002 WL 31527922, at *3 (Iowa Ct. App. Nov. 15, 2002) (noting the court's statement that it had reviewed the presentence investigation report meant the court "clearly knew" about defendant's criminal record). The court also heard from the prosecutor, who discussed Hanson's age and the need to generally deter this type of crime, and from defense counsel, who emphasized other factors like Hanson's remorse and mental-health treatment. *See Boltz*, 542 N.W.2d at 11 ("In adopting Boltz's recommendation of no probation and imposing five more days of jail than requested, it is apparent the sentencing court's general reasons related to the more specific reasons previously articulated by the attorneys."). These recommendations supplement the court's stated reasons on the record for Hanson's sentence, *see id.*, as do the additional reasons set out in the written judgment entry. *See State v. Thompson*, 856 N.W.2d 915, 921 (Iowa 2014) (holding that judges can use check-the-box sentencing forms, with additional statements necessary only if needed to further explain the court's reasoning); *cf. Joy*, 2004 WL 1252691, at *3 (finding "the court erred in relying solely on the nature of the offenses" where the record from the sentencing hearing showed the court only considered that factor and the "written order [did] not demonstrate consideration of any of the other 'minimal essential factors'").

No doubt, the court stressed the nature of Hanson's offense at the sentencing hearing. But the "district court enjoys the latitude to place greater importance on one sentencing consideration over others." *State v. Latcham*,

No. 10-1262, 2011 WL 1138569, at *3 (Iowa Ct. App. Mar. 30, 2011). While the court's consideration of other factors was terse and mostly confined to the written sentencing order, "that terse treatment does not signal an abuse of discretion." *State v. Phelps*, No. 20-1403, 2021 WL 2690495, at *2 (Iowa Ct. App. June 30, 2021) (rebuffing claims that "the court 'failed to seriously consider any factors other than the nature of the offense'" and the court's "superficial[] refer[ence] to the other statutory factors, without more, is little better than oral boilerplate" because the court acknowledged other factors); *see also State v. Taylor*, 490 N.W.2d 536, 539 (Iowa 1992) ("While the court's statement of reasons for the sentence, 'the nature of the offense,' is only a minimal compliance with [rule 2.23(3)(d)], we believe it was adequate."); *State v. Victor*, 310 N.W.2d 201, 205 (Iowa 1982) (holding the court complied with the requirement to state reasons for the sentence when the court only cited the "nature of the offense" because "exactly what motivated and prompted the sentence" was clear from the record as a whole); *State v. Wright*, No. 21-1821, 2023 WL 152773, at *3 (Iowa Ct. App. Jan. 11, 2023) (finding the court "did not merely give lip service" to factors the defendant complained it did not consider when the court noted its consideration of the presentence investigation report and the parties' sentencing recommendations).

We agree with Hanson that more would have been better. *See State v. Hill*, 878 N.W.2d 269, 275 (Iowa 2016) (encouraging sentencing courts "to give more detailed reasons for a sentence specific to the individual defendant and crimes"); *see also State v. Pappas*, 337 N.W.2d 490, 493 (Iowa 1983) ("Each judge must grapple with the facts and circumstances in the case before him and arrive at the sentence he regards as right."). Yet, given our limited appellate review and

the "inherent latitude" afforded to the district court in the sentencing process, *Formaro*, 638 N.W.2d at 725, we find no abuse of discretion and affirm the sentence imposed.

**AFFIRMED.**